N6SBHUMA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          23 Cr. 302 (PGG)

QINGZHOU WANG,
YIYI CHEN,


            Defendants.


                                        Arraignment
------------------------------x

                                        New York, N.Y.
                                        June 28, 2023
                                        12:00 p.m.


Before:


                    HON. PAUL G. GARDEPHE,

                                        District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  ALEXANDER N. LI
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant Qingzhou Wang
BY:  MARNE LENOX


KIRTON LAW FIRM
     Attorneys for Defendant Yiyi Chen
BY:  MARLON G. KIRTON


Also Present: Francesca Tessier-Miller, USPO
              Jianhang Mail, Interpreter  (Mandarin)

N6SBHUMA

1                (Case called; appearances noted)

2                THE COURT:  All right.  We are here for purposes of

3     arraigning the defendants on the indictment.  Mr. Wang, you're

4     here with Ms. Lenox as your attorney; is that correct?

5                DEFENDANT WANG:  Yes.

6                THE COURT:  And, Ms. Chen, you're here with Mr. Kirton

7     as your attorney; is that correct?

8                DEFENDANT CHEN:  Yes.

9                THE COURT:  Have each of you received a copy of the

10    document which reflects the charges against you.  Mr. Wang?

11               DEFENDANT WANG:  Yes.

12               THE COURT:  And Ms. Chen?

13               DEFENDANT CHEN:  Yes.

14               THE COURT:  And, Ms. Chen, do you speak and read

15    English?

16               DEFENDANT CHEN:  A little.

17               THE COURT:  So, Mr. Wang, has the indictment been read

18    to you in Mandarin?

19               DEFENDANT WANG:  Yes.

20               THE COURT:  And, Ms. Chen, has the indictment been

21    read to you in Mandarin?

22               DEFENDANT CHEN:  Yes.

23               THE COURT:  All right.  Mr. Wang, have you discussed

24    the charges in the indictment with your attorney?

25               DEFENDANT WANG:  I'm aware of the alleged crime, and

N6SBHUMA

1    we have discussed the details.

2           THE COURT:  Ms. Chen, have you discussed the charges

3    in the indictment with your attorney?

4           DEFENDANT CHEN:  A little bit.

5           THE COURT:  Both of you should understand that in

6    Count One of the indictment the first charge, you're charged

7    with conspiring to traffic in fentanyl.  In Count Two of the

8    indictment, which is the second charge, you are both alleged to

9    have conspired or agreed to import into the United States what

10   are referred to as fentanyl precursor chemicals and that you

11   did so with the intent to manufacture fentanyl.

12          DEFENDANT WANG:  I heard you.

13          THE COURT:  Count Three of the indictment charges

14   Mr. Wang with importing fentanyl precursor chemicals into the

15   United States with the intention to manufacture fentanyl, and

16   that he did so between November 2022 and January 2023.

17          Count Four charges Mr. Wang with importing

18   methamphetamine precursor chemicals into the United States,

19   again between November 2022 and January 2023.  And in Count

20   Five Mr. Wang and Ms. Chen are both charged with conspiring to

21   commit money laundering.

22          Mr. Wang, do you understand those are the charges

23   against you in the indictment?

24          DEFENDANT WANG:  Yes.

25          THE COURT:  And, Ms. Chen, do you understand that

N6SBHUMA

1  those are the charges against you in the indictment?

2          DEFENDANT CHEN:  Yes.

3          THE COURT:  Mr. Wang, do you wish me to read the

4  indictment to you now here in open court?

5          DEFENDANT WANG:  No.

6          THE COURT:  And, Ms. Chen, do you wish me to read the

7  indictment to you now here in open court?

8          DEFENDANT CHEN:  No thanks.

9          THE COURT:  Mr. Wang, I'm going to ask you as to each

10 charge against you in the indictment how you plead, beginning

11 with Count One, guilty or not guilty?

12         DEFENDANT WANG:  Not guilty.

13         THE COURT:  Count Two, guilty or not guilty?

14         DEFENDANT WANG:  Not guilty.

15         THE COURT:  Count Three, guilty or not guilty?

16         DEFENDANT WANG:  Not guilty.

17         THE COURT:  Count Four, guilty or not guilty?

18         DEFENDANT WANG:  Not guilty.

19         THE COURT:  And Count Five, guilty or not guilty?

20         DEFENDANT WANG:  Not guilty.

21         THE COURT:  And, Ms. Chen, I'm going to pose the same

22 questions to you as to Counts One, Two and Five.  Beginning

23 with Count One, guilty or not guilty?

24         DEFENDANT CHEN:  Not guilty.

25         THE COURT:  Count Two, guilty or not guilty?

N6SBHUMA

1       DEFENDANT CHEN:  Not guilty.

2       THE COURT:  And Count Five, guilty or not guilty?

3       DEFENDANT CHEN:  Not guilty.

4       THE COURT:  All right.  I will now address the recent

5  amendment to Rule 5 of the Federal Rules of Criminal Procedure.

6  As required by Rule 5(f), I direct the government to comply

7  with its obligations under *Brady v. Maryland*, and its progeny,

8  to disclose to the defendants all information, whether

9  admissible or not, that is favorable to the defendants,

10  material either to guilt or to punishment and known to the

11  government.

12       Possible consequences for non-compliance with this

13  order may include dismissal of charges, exclusion of evidence

14  and professional discipline or court sanction on the attorney

15  or attorneys responsible.  After these proceedings, I will

16  enter a written order that more fully describes the

17  government's obligations and the possible consequences of

18  failing to meet those obligations.  And I direct the government

19  to review and comply with that order.

20       Does the government confirm that it understands its

21  obligations and will fulfill them?

22       MR. LI:  Yes, your Honor.

23       THE COURT:  All right.  I will hear from the

24  government about the nature and magnitude of the discovery

25  materials.

N6SBHUMA

1        MR. LI:  Thank you, your Honor.  With respect to

2    discovery materials, your Honor, I expect the discovery will

3    consist of the following:  Law enforcement reports,

4    surveillance, photographs and recordings of in-person meetings,

5    recorded video conferences and voice calls, chat messages and

6    their attachments, the companies online presence, including its

7    websites, product listings and advertisements, financial

8    records, subpoena returns, pen register returns, photographs

9    and lab records of the physical chemicals seized in this case,

10    including certain lab test results.  And I'll note that other

11    lab test results are still pending as to some of those

12    chemicals.

13        With respect to warrants, your Honor, there have been

14    three warrants issued in this matter.  One warrant is for the

15    electronic devices of the defendants that were seized in

16    connection with their arrest and expulsion from Fiji, and that

17    consist of four phones, a laptop and a hard drive.  There is a

18    domain seizure warrant for certain website domains affiliated

19    with the company, and one cell phone location warrant for an

20    individual in the United States.  So those are the three

21    warrants in the case.

22        Your Honor, we do not yet have the extractions of the

23    devices, and candidly I'm not sure how long it will take to get

24    into those devices.

25        THE COURT:  Other than as to the electronic devices,

N6SBHUMA

1    when do you expect to make the discovery available?

2              MR. LI:  Your Honor, we will produce discovery on a

3    rolling basis.  I expect we will be able to substantially

4    complete the production within a month, again with the

5    exception of the electronic devices and possibly certain lab

6    results that we're still waiting on.

7              THE COURT:  All right.  Having heard that, have the

8    lawyers consulted as to when we should meet again?

9              MS. LENOX:  We have, your Honor.  And we'd ask for a

10   control date in 60 days given that the government does not

11   expect to complete discovery for a month, and that is still

12   excepting the electronic devices and possible lab reports.  And

13   given that it seems quite clear that most, if not all of the

14   discovery will require translation, I think it's going to take

15   us quite some time to make our way through it.

16             THE COURT:  All right.  I will schedule another

17   conference for 60 days out.  I do want to make sure that the

18   discovery is provided in a timely fashion, so I will see you

19   again in 60 days just to make sure that discovery is proceeding

20   appropriately and to address any problems that may have come

21   up.  So, Mike, would you give us a date approximately 60 days

22   out.

23             THE DEPUTY CLERK:  Sure, your Honor.  Thursday, August

24   24th, 2:30 is available. Is that day OK?

25             THE COURT:  Does August 24th present any difficulties

N6SBHUMA

1   for anyone?

2          MR. KIRTON:  That's fine, your Honor.

3          MS. LENOX:  That's fine, your Honor.

4          MR. LI:  That's fine, your Honor.

5          THE COURT:  All right.  Does government wish me to

6   exclude time between now and August 24th?

7          MR. LI:  Yes, your Honor.  The government respectfully

8   moves to exclude time.  We believe this is in the interest of

9   justice to allow the government to produce discovery, for the

10  defense to begin reviewing that discovery, and for the parties

11  to confer regarding any pretrial disposition in this case.

12         THE COURT:  Is there any objection to exclusion of

13  time between today and August 24th?

14         MR. KIRTON:  No, your Honor.

15         MS. LENOX:  No, your Honor.

16         THE COURT:  I will exclude time between today and

17  August 24th, 2023, under the Speedy Trial Act pursuant to Title

18  18, united States Code, Section 3161(h)(7)(A) to permit defense

19  counsel to review discovery materials from the government and

20  determine whether any pretrial motions will be necessary.

21         I do find that the ends of justice served by the

22  granting of this continuance outweigh the best interest of the

23  public and the defendants in a Speedy Trial.  I have received a

24  bail application from Mr. Kirton on behalf of Ms. Chen and am

25  prepared to address that bail application now.  Is it the

N6SBHUMA

1    parties wish that I proceed today?

2          MR. KIRTON:  Yes, your Honor.

3          THE COURT:  Okay.  Let me give the background,

4    Mr. Kirton, and then I'll hear from you.

5          The background for the bail application is that

6    Ms. Chen was arrested in Fiji by local authorities and then

7    taken into the custody of the DEA, which transported her from

8    Fiji to the District of Hawaii.  As I understand it, Ms. Chen

9    was presented in this district on June 26, 2023.  She was

10   detained on consent at that time which she now seeks pretrial

11   release.

12         As to the charges against Ms. Chen, as I indicated she

13   has been indicted as part of a multi-defendant conspiracy that

14   allegedly ship huge quantities of precursor chemicals for

15   fentanyl to the United States, 200 kilograms of these chemicals

16   were allegedly actually delivered, which the government says

17   could have been used to create 50 kilograms of fentanyl.  The

18   defendant is charged in three counts with conspiring to

19   manufacture and distribute fentanyl, conspiring to import

20   fentanyl precursor chemicals into the United States for use and

21   manufacturing fentanyl, and also with money laundering

22   conspiracy.

23         The defendant seeks release on the following

24   conditions: a $250,000 personal recognizance bond co-signed by

25   one financial responsible person and secured by $50,000 in

N6SBHUMA

| | |
|---|---|
| 1 | cash; home detention with GPS monitoring, the monitoring of all |
| 2 | of the defendant's electronic devices with no access to the |
| 3 | website of the corporate defendant Humbei Amarvel Biotech Cop. |
| 4 | Limited, strict pretrial supervision, and surrender of all |
| 5 | travel documents.  Citing the defendant's June 28, 2023 letter, |
| 6 | docket number 11, at page one.  I will hear from you |
| 7 | Mr. Kirton. |
| 8 | MR. KIRTON:  Thank you, your Honor.  I'm going to |
| 9 | request that the Court grant bail consistent with the terms |
| 10 | listed in our bond submission before the Court.  I'm going to |
| 11 | request that the Court grant bail consistent with the |
| 12 | conditions listed in our bond report submitted today before |
| 13 | this Court.  I just wanted to add three additional amendments |
| 14 | to those conditions. |
| 15 | One, there should be no contact with co-defendants |
| 16 | except in the presence of counsel.  Two, client won't be |
| 17 | released until a suitable location in the Southern District of |
| 18 | New York is found and located.  Three, client will be released |
| 19 | on her own signature, and that of her colleague listed in t the |
| 20 | pretrial services report in California if he is a suitable |
| 21 | candidate to be a suretor in this case. |
| 22 | I just have three points to make in support of our |
| 23 | application for bond in this case.  One, we believe that the |
| 24 | presumption is rebutted in this case by the bail package |
| 25 | submitted and proposed by the defense.  Pretrial services will |

N6SBHUMA

monitor her computer at all times.  There will be no contact
with any corporate or any other defendants in this case, and
there will be financial security posted of $50,000.  We submit
to the Court that the bail package submitted by the defense
rebuts the presumption in this case.

In terms of risk of flight, your Honor, certainly
there is some risk associated with the fact that she's a
Chinese National.  There's no treaty with that country in terms
of extradition.  However, she will surrender her passport.
There will be GPS monitoring and home detention, and also
consistent with what we submitted in our papers, there's
typically a very low risk of recidivism for persons who receive
bail in the federal system.  I believe that the risk of
recidivism for federal defendants is about one percent
nationwide.

In terms of danger to the community, your Honor.  The
Secretary of State of this country went to visit China last
week and had a number of meetings with his colleague in China,
and they discussed a number of issues.  I imagine that they
also discussed the issue of fentanyl being shipped from China
ending up in the United States of America.  These are the types
of things that could and should be resolved by treaty, should
and could be resolved by negotiations, and sanctions if
necessary.

It's not necessary -- certainly the government chose

N6SBHUMA

1   to prosecute my client, co-defendant and the Chinese company.

2   This is a case of first impression in this country.  But it's

3   in our view, your Honor, the issue of fentanyl, the danger of

4   fentanyl poses to citizens of the United States, those things

5   can be negotiated by treaty.

6          We agree with the government that fentanyl is a

7   problem in this country.  It's a very, very serious problem.

8   Many, many people overdose by taking fentanyl substances.  But

9   it's a stretch to say that because the trafficking of fentanyl

10  is dangerous, because people die that my client is a danger to

11  the community.  She is basically a translator, a low-level

12  employee of an affiliated company of the corporate defendant.

13  She basically translated terms and conditions -- again I'm not

14  assuming anything the government proffered is actually true --

15  but for purposes of this discussion, she translated terms and

16  conditions between some of the principals of the corporate

17  defendant and the DEA agent in this case.

18         There's no proof or evidence that she had any

19  authority to bind the corporation to do anything.  There's no

20  proof that she had any authority to receive payments on behalf

21  of the company or principals of the company, so I submit to the

22  court that fentanyl is a danger.  It is a danger.  That's very

23  clear.  But in our view, our client is not a danger to the

24  community for purposes of the Bail Reform Act.  That concludes

25  my remarks unless the Court has any questions.

N6SBHUMA

1          THE COURT:  All right.  I'll hear from the government.

2          MR. LI:  Thank you, your Honor.  Let me just address

3     the proposed conditions that the defense has raised, which the

4     defense argues would mitigate the risks in this case.  I think

5     Mr. Kirton started off by saying she can be monitored by

6     pretrial services.  The defendant has alleged to use encryptic

7     applications to communicate with the confidential sources.  And

8     those communications cannot be monitored by pretrial services.

9     They are by their nature encrypted, and therefore

10    un-monitorable.

11         In addition, Mr. Wang, her co-defendant in this case

12    is alleged to have received money by cryptocurrency, which

13    presents its own difficulties in tracing.  And so I don't know

14    how pretrial services could effectively monitor the defendant's

15    electronic communications in a case where she has, as alleged,

16    used technological means to evade interception and detection.

17         With respect to the risk of flight.  The defendant is

18    a national of a country with whom we do not have an extradition

19    treaty.  She's a citizen national of China.  And as she's

20    argued, her life is in China.  She has no reason to be in the

21    United States to face charges.  She has every incentive to

22    flee.  And if she flees, there's no prospect of getting her

23    back.  That in its essence is the risk of flight.

24         The general statistics that the defense points out

25    about the low risk of recidivism is not fairly applicable to

N6SBHUMA

1    the defendant.  Those are national statics applicable to a wide

2    range of people who are not alleged to be similarly situated to

3    the defendant in terms of being from a country that does not

4    extradite with ties solely to that country.

5              With respect to the factual allegations that

6    Mr. Kirton has pointed out, and I do want to pushback on this.

7    The defendant was not a mere translator.  Her role was to market

8    the company's products, and she did that in two ways.  First,

9    as alleged, she created the company's online presence.  And

10   there's evidence that she registered.  She's the actual

11   registrant of each of the domains of both the company and a

12   large number of affiliated websites.  And those websites detail

13   the company's offerings, listing specifically for fentanyl

14   precursors.

15             They describe the potential use to make fentanyl, as

16   well as the company's ability to ship those products by

17   "stealth" including by repackaging them, those chemicals as

18   products such as motor oil, nuts and dog food.  She's also

19   listed on the contact page by her own phone number on the

20   company's primary website demonstrating that if a customer

21   wanted to actually buy something, they could reach out directly

22   to her.  And so in that capacity too she's not merely a

23   translator.

24             Now, of course, her second role was to actually

25   participate in the negotiated transactions in this case with

N6SBHUMA

the DEA confidential sources.  And, yes, in those conversations she helped Mr. Wang, the co-defendant, by translating between English and Mandarin.  But she was not, again, a mere translator.  She was intimately familiar with the products that the company offered.  She was intimately familiar with matters such as pricing and logistics.

And as we've shown in our opposition letter, she even went so for as to handwrite notes by things such as the Chemical Abstract Service number, the CAS number, to make sure that they clearly understood, to make sure everybody clearly understood exactly what chemicals were being sold.  And the CAS number that is shown in our submission is in fact for Boc-4-AP, which is a listed chemical.  It is a regulated chemical, and also a fentanyl precursor.  So it is simply not the case that the defendant was merely a translator in this case.

As the defense conceded at the outset, this is a presumption case.  There is a presumption of detention because the defendant is charged with crimes, drug trafficking crimes carrying a maximum penalty of at least ten years.  And in light in recognition I think of the risk of flight here in particular, pretrial services has also recommended that the defendant be detained.  We join in that recommendation.  The defense has not proposed a bail package that would mitigate the risks of flight of danger in this case.  We do not believe such a package could possibly be presented.  And for those reasons,

N6SBHUMA

1    your Honor, we respectfully request detention.

2              I'm happy to answer any question the Court may have.

3              THE COURT:  In order for a defendant to be detained

4    pending trial, the government must demonstrate, first, by a

5    preponderance of the evidence that there is no condition or

6    combination of conditions that will ensure the defendant's

7    return to court; or, second, by clear and convincing evidence

8    demonstrate that there is no condition or combination of

9    conditions that will reasonably assure the safety of the

10   community if the defendant is released on bail.

11             Here, the government seeks detention both on grounds

12   of risk of flight and danger to the community.  Because of the

13   drug conspiracy charges, there is a rebuttal presumption under

14   18, United States Code, Section 4142(e)(3)(B), that there is no

15   condition or combination of conditions that will reasonably

16   ensure the defendant's return to court and the safety of the

17   community.

18             The Bail Reform Act, 18, United States Code, Section

19   3142(g) directs me to consider the following factors in

20   determining whether pretrial release is appropriate:

21             First, the nature and circumstances of the offenses.

22   Second, the weight of the evidence against the defendant.

23   Third, her personal history and characteristics, including her

24   character, physical and mental condition, family ties,

25   employment, financial resources, length of residence in the

N6SBHUMA

1   community, community ties, pass conduct, substance abuse,

2   criminal history and any record concerning court appearances.

3   And fourth, the nature and seriousness of the danger to any

4   person or the community that would be posed by the defendant's

5   release.

6           Mr. Li, I see you standing.  Is there something else

7   you want to say?

8           MR. LI:  I apologize, your Honor.  There is a factual

9   clarification I just wanted to make before the Court issues a

10  ruling.  I believe in the background remarks the Court

11  indicated that the government had proffered the 200 kilograms

12  of precursors shipped could have made 50 kilograms of fentanyl.

13          Based on lab testing, this is in the indictment, one

14  of the chemicals which has been tested is essentially an

15  analogue of a fentanyl precursor, so it's a closely related

16  substitute.  And what it would be used to make is a fentanyl

17  analogue as opposed to straight fentanyl, so I just wanted to

18  make that clarification.

19          THE COURT:  Help me understand what a fentanyl

20  analogue is.

21          MR. LI:  Sure, your Honor.  As I understand it, the

22  product that was shipped is essentially Boc-4-AP, the fentanyl

23  precursor with an extra methyl block of atoms on one of rings

24  of the molecule.  And that extra molecule -- excuse me, that

25  extra methyl group will be carried over into the final fentanyl

N6SBHUMA

1   product.  So fentanyl is a synthetic opioid, and now this

2   analogue that's produced has this extra methyl block on it, and

3   it's called ortho-methylfentanyl.  That's the fentanyl analogue

4   that's produced.

5          THE COURT:  Now, would this fentanyl analogue, would

6   it be consumed in the same fashion as fentanyl?

7          MR. LI:  That's right, your Honor.

8          THE COURT:  Okay.  Let me begin with the nature of the

9   offense.  As I've indicated, the defendant is charged with

10  conspiring to ship huge quantities of precursor chemicals for

11  fentanyl and fentanyl analogue to the United States.  I regard

12  the charges pending against the defendant as extremely serious

13  given the nature of fentanyl and fentanyl analogues which

14  present enormous risk of harm to those who use these

15  substances.

16         As we've heard, the defendant also allegedly marketed

17  on behalf of the alleged conspirators the chemical products,

18  the precursor chemicals online.  The government says that she

19  created and registered websites on which the sale of these

20  precursor chemicals for fentanyl, fentanyl analogues and

21  methamphetamine were offered.  On the website the conspirators

22  offered to disguise these precursor chemicals so that they

23  won't be detected.

24         The defendant is alleged to have personally negotiated

25  the sale of these precursor chemicals with DEA informants and

N6SBHUMA

1    to have met with a DEA informant in Bangkok to discuss the sale

2    of these precursor chemicals.

3            MR. KIRTON:  Your Honor, I'm sorry.

4            THE COURT:  Yes.

5            MR. KIRTON:  I apologize.  I think maybe the Court

6    should consider leaving the issue open because I may want to

7    make a written submission because this information about

8    fentanyl analogues is new to me.  It's okay, but I just think

9    that it may make sense for us to look into it and make a

10   written submission on the record.

11           It's not really necessary to have an oral argument

12   about this, but I'd like an opportunity to confer with the

13   government, look through whatever I have, and just make maybe a

14   very brief submission on this issue.  I could do it as early as

15   the 5th of July if the Court would allow that.  I apologize to

16   the Court.  I just didn't know about this issue.

17           THE COURT:  So what you want me to do is adjourn

18   today's proceeding, take written submissions from the parties

19   on this issue of fentanyl analogues, and then continue the bail

20   hearing on another day?

21           MR. KIRTON:  Yes, and keep the other date set by the

22   Court as a control date.

23           THE COURT:  Okay.  Mr. Li, do you have any objection

24   to the proposal Mr. Kirton has made?

25           MR. LI:  No, your Honor.  It's the defendant's motion,

N6SBHUMA

1    so if the defense wants to withdraw it for present purposes

2    that's certainly fine by the government.  I will just note that

3    the defendant is charged in Count One with trafficking fentanyl

4    analogues, in addition to fentanyl; that there are allegations,

5    it's paragraph 33, regarding the specific fentanyl precursor

6    analogue in this case, and so this is not new information.

7              And so both the factual predicate and the charges all

8    refer to fentanyl analogues in addition to fentanyl.  Again,

9    it's defendant's motion, so they're free to withdraw it, but

10   the government does not believe this is new information.

11             THE COURT:  All right.  So, Mr. Kirton, you will make

12   whatever submission you deem appropriate by July 5th, and

13   Mr. Li, how long will you need to respond?

14             MR. LI:  Your Honor, the government will respond

15   within two days.

16             THE COURT:  Okay.  So that will be the 7th.  Why don't

17   I pick a date now for our resumed bail hearing.  Mike, how

18   about Tuesday, July 11th, perhaps towards the end of the day,

19   maybe 4:00 or thereabouts.

20             THE DEPUTY CLERK:  Actually, your Honor, you have

21   something at 4:00.  That whole day is kind of booked.

22             THE COURT:  That day is bad?

23             THE DEPUTY CLERK:  Yes, very bad.

24             THE COURT:  How about Wednesday?

25             THE DEPUTY CLERK:  Wednesday at 4:00 is better, your

N6SBHUMA

1    Honor.

2           THE COURT:  Does Wednesday, July 19th, 4:00 present

3    any issues for anyone?

4           MR. LI:  No, your Honor.

5           MR. KIRTON:  No, your Honor.

6           THE COURT:  So we will resume the bail hearing at 4:00

7    on July 19th.  I will look for a letter -- I'm sorry.  I was

8    talking about July 12th at 4:00.  Is that the date we have,

9    Mike?

10          THE DEPUTY CLERK:  Yes, July 12th.

11          THE COURT:  July 12th, 4:00.  We will resume the bail

12   hearing July 12th, 4:00.  I will look for a letter from

13   Mr. Kirton on July 5th, and a response from Mr. Li on July 7th,

14   and we will resume the bail hearing 4:00 on July 12th.

15          If you're about to ask me if you have to be there on

16   July 12th, no, you do not.

17          MS. LENOX:  Thank you, your Honor.

18          THE COURT:  All right.  Mr. Li, anything else on

19   behalf of the government?

20          MR. LI:  No, your Honor.  Thank you.

21          THE COURT:  Mr. Kirton, anything else on behalf of

22   Ms. Chen?

23          MR. KIRTON:  Yes, your Honor.  I've spoken to

24   representatives of the Chinese Consulate.  They're here in

25   court today.  They'd like to know if they can have a brief

N6SBHUMA

non-contact visit with Ms. Chen and the co-defendant if it's

okay with the Court and the marshals.

        THE COURT:  The marshals have any problem with that.

        THE MARSHAL:  Can I approach off the record, your

Honor?

        THE COURT:  Can't really go off the record.

        THE MARSHAL:  I don't think we're allowed to.  We have

to get supervisor approval, and also it probably would have to

be at 500 Pearl Street, not here.

        THE COURT:  Sounds like that's not going to be

possible, Mr. Kirton.

        MR. KIRTON:  That's fine, your Honor.  I just wanted

to put it on the record.

        THE COURT:  Yep.  If there's nothing else, we're

adjourned.

        (Adjourned)